**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RaceRedi Motorsports, LLC         :
                                  :
v.                                :    Civil Action: WMN-09-221
                                  :
Dart Machinery, LTD., et al.      :
                                  :

**MEMORANDUM**

Pending before the Court is a motion to dismiss filed by Plaintiff and Counter-Defendant RaceRedi Motorsports, LLC (RaceRedi), Paper No. 14, and a motion to dismiss filed by Third-Party Defendant Finishes, Inc. (Finishes).  Paper No. 17. These motions are fully briefed.  Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motions will be granted in part and denied in part.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

Dart Machinery Ltd. (Dart) is a Michigan corporation that develops, manufactures, markets, and distributes products related to the auto racing industry.  Counterclaim and Third Party Complaint (Counterclaim) ¶ 1, 7.  In addition, Dart manufactures, maintains, and leases high performance racing engines to teams competing in National Hot Rod Association (NHRA) events.  RaceRedi is a Maryland limited liability company which competes in NHRA drag-racing events.  Id. ¶ 2, 10. Finishes, Inc. (Finishes) is a Maryland Corporation and

specialty subcontractor specializing in metal framing, drywall, and plaster.  Id. ¶ 3, 9.  Dart alleges that in late 2007, RaceRedi, Finishes, and Dart entered into a verbal contract (Contract) whereby Dart agreed to provide RaceRedi with high-performance engines and services for the 2008 NHRA race season. Id. ¶ 13.  Dart and RaceRedi agree that the terms of the Contract included the use of Dart's racing engines and parts provided by Dart, as well as general administrative services. Id. ¶ 16, 17.  The parties, however, dispute most of the remaining terms of the contract, including the length of the contract.  Answer ¶ 13.  RaceRedi and Finishes also contest Finishes involvement in the contract.  Id.

Dart invoiced Finishes each month from January 2008 to May 2008 for payment under the Contract.  Counterclaim, Ex. B.  Dart alleges that Finishes and RaceRedi failed to pay the invoiced amounts in April and May and failed to pay for parts provided by Dart, thereby breaching the Contract.  RaceRedi alleges that Dart breached the contract by failing to provide the engines and services.

This is not the first lawsuit that has been filed related to this contract.  Dart initially filed suit against RaceRedi on June 18, 2008, in the state circuit court for Oakland County, Michigan, alleging breach of contract, unjust enrichment, conversion and misappropriation of property.  Dart Machinery,

Ltd. v. RaceRedi Motorsports, LLC., Case No. 092343-CK.
RaceRedi then filed suit in this Court on June 24, 2008, six
days after Dart filed its action in Michigan.  Case No. WMN-08-
1659.  RaceRedi also removed Dart's Michigan state action to the
United States District Court for the Eastern District of
Michigan on July 23, 2008.

On July 30, 2008, Dart moved to dismiss RaceRedi's
complaint in this Court (WMN-08-1659) or, in the alternative, to
have it transferred to Michigan.  Applying the "first to file
rule" this Court granted Dart's motion and transferred
RaceRedi's complaint to the United States District Court for the
Eastern District of Michigan.  Subsequently, on January 30,
2009, the United States District Court for the Eastern District
of Michigan dismissed Dart's Michigan action for lack of
jurisdiction.  Id. [1]

On February 02, 2009, RaceRedi filed the instant action in
this Court against Dart alleging breach of contract.  Dart then
filed a Counterclaim and Third-Party Complaint against RaceRedi
and Finishes on March 30, 2009.  In addition to a breach of
contract claim (Count I), Dart also asserts claims for unjust
enrichment (Count III), conversion (Count IV), misappropriation

---

[1] The parties did not request consolidation of the two cases.  It
appears that no further proceedings have occurred in the United
States District Court for the Eastern District of Michigan, and
RaceRedi's transferred action remains open.

of trade secrets (Count V), and injunctive relief (Count VI).[2]
In response, RaceRedi filed a motion to dismiss the counterclaim
for attorney's fees in Count I,[3] as well as Dart's claims for
unjust enrichment, conversion, misappropriation of trade
secrets, and injunctive relief (Counts III through VI).  Paper
No. 14.  On April 29, 2009, Finishes also filed a separate
motion to dismiss the Third-Party Complaint brought against it.
Paper No. 17.

## II.  STANDARDS OF LAW

To survive a Rule 12(b)(6) motion to dismiss, "detailed
factual allegations" are not required, but a plaintiff must
"provide the 'grounds' of the plaintiff's 'entitle[ment] to
relief'" and this "requires more than labels and conclusions,
[or] a formulaic recitation of the elements of a cause of
action[.]"  Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 555
(2007) (internal citations omitted).  In considering such a
motion, the court is required to accept as true all well-pled
allegations in the complaint, and to construe the facts and
reasonable inferences from those facts in the light most
favorable to the plaintiff.  Ibarra v. United States, 120 F.3d
472, 474 (4th Cir. 1997).  A plaintiff must have alleged facts

---

[2] Dart's Counterclaim does not include a Count II.

[3] RaceRedi does not move to dismiss any other part of Dart's
breach of contract claim in Count I.

"to raise a right to relief above the speculative level[.]"
Twombley, 550 U.S. at 555.  "[O]nce a claim has been stated
adequately," however, "it may be supported by showing any set of
facts consistent with the allegations in the complaint."  Id. at
563.

In addition to the factual allegations, a court may also
consider any documents referred to in the complaint and relied
upon to justify a cause of action – even if the documents are
not attached as exhibits to the complaint – without converting
the motion to a motion for summary judgment.  Fare Deals Ltd. v.
World Choice Travel.com, Inc., 180 F. Supp. 2d 678, 683 (D. Md.
2001).  When the bare allegations of the complaint conflict with
any exhibits or other documents, whether attached or adopted by
reference, the exhibits or documents prevail.  Fayetteville
Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th
Cir. 1991).

## III.  DISCUSSION

A. Choice of Law

The parties sharply contest which state's law governs
Dart's claims and devote a substantial portion of their
pleadings to this issue.  While it is not clear that the choice
of law ultimately will have significant impact on the outcome of
the pending motions, the Court will briefly address the issue to
provide some guidance as this litigation goes forward.

In the initial motion to dismiss, RaceRedi based its arguments on Maryland substantive law.  Dart, however, contends in its Opposition that Michigan law should control.  Opp'n at 5-6.  In advocating that choice-of-law, Dart works through multiple choice-of-law iterations before ultimately resting on Michigan substantive law.  Opp'n at 1-5.  Dart first looks to Maryland's choice-of-law rules for contract claims, concluding that under the doctrine of lex loci contractus, California law would most likely apply.  Id. at 2.  Instead of ending the analysis there, however, Dart then looks to California's choice-of-law rules which point to the place of contract performance as the source of the governing law.  Identifying Michigan as the place of performance, Dart then applies Michigan's choice-of-law rules to determine the source of the substantive law.   Michigan determines choice-of-law using a number of factors set forth in 1 Restatement of Conflicts of Laws, including the place of contracting, place of performance, the location of the subject matter, and the location of the parties.  Id. at 3-5.  Applying these factors to the facts of the case, Dart finally concludes that Michigan law should apply based on the place of performance and the subject matter of the contract.  Id.[4]

---

[4] Dart, however, never distinguishes between contract and tort claims.

In reply, RaceRedi abandons the argument that Maryland law controls the unjust enrichment claim and now contends that California law applies.  Reply at 1-2.  RaceRedi also contends that Maryland law should apply to the conversion claim and the misappropriation claim.  Id. at 3-4.

Under the rule first established by the Supreme Court in Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941), a federal court exercising diversity jurisdiction must follow the choice-of-law rules of the state where the action is filed to determine which state's substantive law to apply.  This principle unequivocally compels the use of Maryland choice-of-law rules to govern the present case.  Dart's attempt to prod the court into applying first Maryland's, then California's, and then Michigan's conflicts law is misguided.  Employing Dart's methodology, one could envision a scenario where choice-of-law iterations could extend infinitely.  The choice-of-law analysis need not proceed down such a tortured trail.

In contract claims, Maryland follows the doctrine of lex loci contractus, applying the substantive law of the place where the contract was formed.  Commercial Union Ins. Co. v. Porter Hayden Co., 698 A.2d 1167 (Md. Ct. Spec. App. 1997).  Both parties agree that the contract was made in California.  See Opp'n at 2; Reply at 2.  Consequently, California law governs all contract related matters.  For tort claims, Maryland follows

7

the principle of <u>lex loci delicti</u>, applying the law of the state where the injury occurred.  <u>Fluxo-Cane Overseas Ltd. v. E.D. & F. Man Sugar Inc.</u>, 599 F. Supp. 2d 639, 642 (D. Md. 2004).

While these principles are well established, the choice-of-law rule applicable to unjust enrichment claims is somewhat less certain.  Maryland courts have disagreed on the law to be applied to such claims.  <u>See</u> <u>Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.</u>, 249 F. Supp. 2d 703, 707 (D. Md. 2003) (noting disagreement).  In a decision issued ten years ago, this Court turned to the Restatement (Second) of Conflict of Laws § 221 (1971) as guidance in determining the governing law for an unjust enrichment claim.  <u>See</u> <u>Motor City Bagels, L.L.C. v. American Bagel Co.</u>, 50 F. Supp. 2d 460, 477 (D. Md. 1999).  In more recent cases, Maryland courts, including this Court, have applied the doctrine of <u>lex loci contractus</u> to unjust enrichment claims.  In <u>Konover Prop. Trust Inc. v. WHE Assocs., Inc.</u>, the Maryland Court of Special Appeals posited that, although it did not impact the overall outcome of the case before it, the law of the state where the contract was formed should have been applied.  790 A.2d 720, 728-729, (Md. Ct. Spec. App. 2002).[5]  Citing <u>Konover</u>, this Court explicitly reaffirmed

_____

[5]  The Maryland Court of Special Appeals did not fully explain why it turned to the choice-of-law for contract actions to determine the choice-of-law for unjust enrichment claims. Courts that have addressed the issue more directly have reasoned

the application of lex loci contractus to claims for quantum

meruit or unjust enrichment.  Harte-Hanks Direct

Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.,

299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004).  Following the only

decision from a Maryland state court on this issue and the

weight of authority from other jurisdictions, this Court will

apply the rule of lex loci contractus to the unjust enrichment

claim.  Thus, California substantive law will govern.

Conversion and misappropriation of trade secrets both

constitute tort claims and, as previously stated, the principle

of lex loci delicti governs tort claims filed in Maryland.

Fluxo-Cane, 599 F. Supp. 2d 639, 642 (D. Md. 2004).  Under

Maryland law, conversion occurs in the state where any wrongful

retention of plaintiff's property and subsequent injury occurs.

Because any unauthorized retention of Dart's property would have

occurred in Maryland, Maryland substantive law is applicable.

Similarly, Maryland law governs Dart's misappropriation

claim under the principle of lex loci delicti since any

misappropriation would have occurred in Maryland, at RaceRedi's

place of business.  Maryland, however, along with over forty

---

that because a claim for unjust enrichment is "quasi-
contractual" in nature, the choice-of-law rules for contracts
should be applied.  See, e.g., David v. American Suziki Motor
Corp., -- F. Supp. 2d --, 2009 WL 1838323 (S.D. Fla. June 16,
2009); In re Bridgestone/Firestone, Inc. Tires Product Liab.
Litigation, 155 F. Supp. 1069 (S.D. Ind. 2001); Iwanowa v. Ford
Motor Co., 67 F. Supp. 2d 424 (D.N.J. 1999).

other states, has adopted the Uniform Trade Secrets Act.
Because both Michigan and California have also adopted the
Uniform Trade Secrets Act, this determination is of little
import.

   B. Claims Against RaceRedi

      1. Attorney's Fees

RaceRedi has moved to dismiss Dart's claim for attorney's
fees in Count I of the Counterclaim.  Mot. at 1.  Dart agreed to
strike this demand.  Opp'n at 5.

      2. Unjust Enrichment

In its motion to dismiss, RaceRedi alleges that Dart's
unjust enrichment claim is barred by the existence of the
express contract that governs the subject matter of the claim.
RaceRedi Mem. at 3.  It is true that, under California law,
"unjust enrichment is an action in quasi-contract, which does
not lie when an enforceable, binding agreement exists defining
the rights of the parties."  Paracor Fin. v. Gen. Elec. Capital
Corp., 96 F.3d 1151, 1167 (9th Cir. 1996).  Rule 8(e)(2),
however, permits a party to plead multiple, and when necessary,
inconsistent claims.  Although some courts have dismissed unjust
enrichment claims when plead in conjunction with an undisputed
express contract, when the terms of a contract or parties to
said contract are disputed, courts permit alternative pleading.
See, e.g., Newman & Schwartz v. Asplundh Tree Expert Co., 102

F.3d 660 (2d Cir. 1996) (stating that unjust enrichment claim
was properly pleaded in alternative to breach of contract claim
where one defendant disputed being a party to the contract).
Based on the claims and counterclaims set forth by RaceRedi and
Dart, it is evident that the terms and the extent of the
contract remain in dispute.  Therefore, under Rule 8(e)(2), Dart
should be permitted to plead unjust enrichment in the
alternative.

     In allowing this claim to go forward, the Court is aware
that there is a line of California cases holding that unjust
enrichment is not a valid cause of action in California.  See
Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1100 (N.D.
Cal. 2006) (discussing the "apparent confusion over the
viability of a cause of action for unjust enrichment" under
California law and collecting cases).  Upon review of this line
of cases, this Court agrees with the observation of the United
States District Court for the Northern District of California in
Nordberg that those cases finding no cause of action for "unjust
enrichment" are making "essentially semantic arguments –
focusing on the interrelationship between the legal doctrine of
unjust enrichment and the legal remedy of restitution."  Id.
Generally, a party asserting a claim of unjust enrichment is
simply seeking the remedy of restitution, and that is certainly
the case here.  While this remedy may be superfluous to recovery

under other causes of action, this Court concludes it would be inappropriate to make that determination at this stage in the litigation.  See id. at 1101.

3. Conversion

Under Maryland law, "an action for conversion lies for an unlawful and tortious taking or exercise of dominion over plaintiff's property." Brand Iron, Inc. v. Koehring Co., 595 F. Supp. 1037, 1040 (D. Md. 1984); see also, Humphrey v. Herridge, 653 A.2d 491, 495 (Md. Ct. Spec. App. 1995)("The tort of conversion may consist of the wrongful deprivation of the use of goods."). Specifically, conversion requires a defendant to convert a plaintiff's goods to his own use, or to wrongfully deprive a plaintiff of their use. Kirby v. Porter, 125 A. 41, 43 (Md. 1923). "To recover for conversion, a plaintiff must have either actual possession of the goods or have had a right to the immediate possession of the goods." Fluxo-Cane, 599 F. Supp. 2d at 642.

In challenging Dart's conversion claim, RaceRedi argues that the failure by a contracting party to pay the contract price or debt is not a conversion but merely a breach of contract. Mot. at 3 (citing Brand Iron, 595 F. Supp. at 1040 ). Accordingly, RaceRedi contends that Dart's conversion claim should be dismissed. Id. RaceRedi's argument ignores Dart's allegations that "[u]pon termination of the Contract, Finishes

12

and RaceRedi failed and refused to return the Parts" provided by Dart to RaceRedi.  Counterclaim ¶ 26.  Ultimately, it remains in dispute whether the parts were loaned or sold to RaceRedi, as well as whether the allocation of the parts fell under the terms of the contract.  Because the parts potentially are still property of Dart, the claim for conversion will not be dismissed.

### 3. <u>Misappropriation of Trade Secret Information</u>

In its motion to dismiss, RaceRedi contends that Dart does not allege facts sufficient to support a claim for misappropriation.  Specifically, RaceRedi argues that the disputed data – including weather conditions, track temperatures, race times, and water and oil temperatures – does not qualify as a trade secret.  RaceRedi Mem. at 5.  RaceRedi bases this conclusion on allegations that Dart and RaceRedi jointly collected the data and that Dart did not take measures to ensure "that this information was kept secret from RaceRedi." <u>Id.</u>  RaceRedi also contends that no misappropriation occurred because RaceRedi did not acquire the information by improper means, nor did RaceRedi disclose the information to a third-party.  <u>Id.</u>

Under the Maryland Uniform Trade Secrets Act (MUTSA) a trade secret is defined as

> information, including a formula, pattern,
> compilation, program, device, method, technique, or
> process, that: (1) derives independent economic value,
> actual or potential from not being generally known to,
> and not being readily ascertainable by proper means
> by, other persons who can obtain economic value from
> its disclosure or use; and (2) is the subject of
> efforts that are reasonable under the circumstances to
> maintain its secrecy.

Md. Code Ann., Com. Law II § 11-1201(e).

Pursuant to this definition, RaceRedi's argument for dismissal on the grounds that the information does not qualify as a trade secret proves baseless.  Data regarding weather conditions, track temperatures, race times, and water and oil temperatures can easily be characterized as a compilation of information with economic value derived from not being readily known or ascertainable.  Dart alludes to this economic value in the complaint, citing the "highly competitive nature of NHRA Pro Stock racing."  Counterclaim at 7.

Furthermore, in contrast to Telecom America Inc. v. Oncor Comm'ns, Inc.,[6] on which RaceRedi relies, Dart took unequivocal

---

[6] The Court in Telecom held that:

> Telecom did not make reasonable efforts to
> keep its database secret.  Telecom produced
> no evidence of any agreement, procedure or
> other measure instituted to guard against
> unauthorized disclosure of this information.
> And, the Telecom employee entrusted to
> compile and disseminate the information to
> Oncor received no instructions concerning
> its alleged confidential nature.

measures to ensure secrecy of the data and other information
transmitted to RaceRedi in the form of a Confidentiality
Agreement signed by both parties.  Counterclaim, Ex. D.  The
existence of such Confidentiality Agreement easily satisfies the
second part of the trade secret definition for the purposes of a
Rule 12(b)(6) motion.  In addition, RaceRedi's contention that
the data cannot be a trade secret due to the fact that Dart
shared the information with RaceRedi lacks any merit,
whatsoever.  The statutory definition of a misappropriation
includes disclosure of a trade secret "[a]cquired under
circumstances giving rise to a duty to maintain its secrecy or
limit its use," which clearly encompasses the present set of
facts.

Dart has also sufficiently alleged a misappropriation.
Under the MUTSA, misappropriation includes "disclosure or use of
a trade secret of another without express or implied consent."
Md. Code Ann., Com. Law II, § 11-1201(e).  Under the
Confidentiality Agreement signed by both parties, Dart expressly
retained ownership of all Confidential Information.
Counterclaim, Ex. D. at 2.  Furthermore, the terms of the
Contract required that all confidential information be "returned
to [Dart] or destroyed promptly upon written request and shall
not thereafter be retained in any form by Recipient."  Id.

---

31 Fed. Appx. 809, 814-815, 2002 WL 429300, *4 (4th Cir. 2002).

Based on these terms, at the time of the alleged usage, RaceRedi "knew or had reason to know that the person's knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." For these reasons, RaceRedi's motion to dismiss the misappropriation claim will be denied.

### 4. Injunctive Relief

Dart's claim for injunctive relief is based on a signed Confidentiality Agreement that explicitly provides for injunctive relief in the event of a breach or threatened breach of the agreement. Counterclaim ¶ 52,[7] Ex. D ¶ 6. According to the Agreement, confidential information includes "all information in whatever form transmitted relating to past, present or future business affairs, including without limitation financial, assets, projections, ideas, formulate process, research, development, business plans, operations, or systems, of Owner or another party . . . ." Confidentiality Agreement ¶ 1. Dart also alleges that a Pontiac GXP used by RaceRedi during their contractual relationship contains proprietary technology constituting confidential information. Counterclaim ¶ 52. Dart further alleges that RaceRedi violated the confidentiality agreement by continuing to use the Pontiac GXP with the

---

[7] Dart misnumbered the paragraphs in the Counterclaim and there are two paragraphs numbered "52." This citation is the the first Paragraph 52.

assistance of another racing group (Warren and Kurt Johnson) after the contractual breach with Dart.  Id. ¶ 53-58.  In Count VI, Dart seeks an injunction barring continued use of the Pontiac or use and dissemination of the confidential information.

In moving to dismiss Dart's claim for an injunction, RaceRedi asserts that no proprietary information remains in the Pontiac GXP.  Dart, however, asserts that it does and the Court must accept that allegation as true at this stage of the litigation.  Furthermore, under Section 11-1202(a) of the MUTSA, "the actual or threatened misappropriation of a trade secret may be enjoined" when the information at issue qualifies as a trade secret and the individual has actually misappropriated the information or threatened to do so.  LeJeune v. Coin Acceptors, Inc., 849 A.2d 451, 459 (Md. 2004).  Because Dart's claim for misappropriation remains valid, injunctive relief may be warranted against further misappropriation.

RaceRedi's primary argument in moving to dismiss the claim for injunctive relief is that Dart has failed to establish the four factors laid out by the Fourth Circuit which are required for a party to demonstrate an entitlement to preliminary injunctive relief: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;(2) the likelihood of harm to the defendant if the requested relief is

granted;(3) the likelihood that the plaintiff will succeed on the merits;(4) the public interest.  Mem. at 6 (citing U.S. Dept. of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006)).  The Court finds that the issue of Dart's entitlement to any preliminary injunctive relief, however, is not before the Court.  While Dart ends its Counterclaim with a prayer that the Court "enter a TRO, preliminary injunction and permanent injunction" concerning those activities, Counterclaim at 10, Dart has not filed a motion for a temporary restraining order or preliminary injunction.

C. Claim Against Finishes

Finishes moves to dismiss Dart's Third-Party Complaint on the ground that Dart failed to provide factual information sufficient to maintain the allegation that Finishes and RaceRedi operate as alter-egos.  Finishes is correct that Maryland courts generally employ great caution and reluctance in applying the alter-ego theory to separate legal entities.  See Hildreth v. Tidewater Equip. Co., 838 A.2d 1204, 1210 (Md. 2003).[8]  "Although there appears to be no universal rule as to the specific criteria that courts will consider in determining whether to

---

[8] Although Dart argues that Michigan law applies here, this Court has determined that the issue of piercing the corporate veil is governed by the law of the state of incorporation.  Meisel v. Ustagoglu, Civ. No. 98-3863, 2000 WL 33374486 (D. Md. March 31, 2000)(citing Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 933 (7th Cir. 1996)).  Thus, Maryland law governs this issue.

apply the doctrine, . . . some of the factors commonly considered, when dealing with a single corporation, are (1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records." Id.

Evaluating alter ego liability typically requires a fact-specific inquiry that courts delay until summary judgment to decide. In re American Honda Motor Co., Inc. Dealerships Relations Litigation, 941 F.Supp. 528, 551 (D. Md. 1996). Courts in Maryland, nonetheless, have dismissed alter ego claims under Rule 12(b)(6). In American Honda, the court held that allegations of the two entities using consolidated financial statements and maintaining interlocking directorates, even if taken as true, would be insufficient to justify piercing the corporate veil. Without any other suggestions that the alter ego was incorporated for fraudulent purpose, or inadequately capitalized, the court dismissed the claim. Id.

Finishes correctly alleges that Dart has not provided sufficient factual allegations to maintain a claim against Finishes as an alter ego of RaceRedi. In fact, Dart fails to

mention any of the factors required by the court to apply the veil-piercing doctrine. Nevertheless, while Dart premised its claims against Finishes primarily under an alter-ego theory,[9] Dart also alleged in the Counterclaim that both "Finishes and RaceRedi contracted with Dart for the 2008 NHRA race season" and that both parties breached the contract. Counterclaim ¶¶ 13, 23. In the event that there is evidence that Finishes was a direct party to the contract, alter-ego liability would be immaterial. Accordingly, this Court will allow the Third-Party claim against Finishes to go forward.

## IV. CONCLUSION

For the reasons stated above, RaceRedi and Finishes' motion to dismiss will be granted in part and denied in part. Dart's claim for attorney's fees in Count One will be dismissed. Otherwise, Dart's claims will be permitted to go forward. A separate order will issue.

---

[9] Dart disingenuously argues in its Opposition to Finish's motion that "Dart's claim against Finishes is simply for breach of contract, not the 'alter ego' theory that Finishes contrives." Opp'n at 1. Far from something contrived by Finishes, the claim that Finishes was the alter-ego of RaceRedi is front and center in the Counterclaim. See Counterclaim ¶¶ 11 ("RaceRedi conducts business through its alter ego, Finishes"), 21 ("Dart invoiced Finishes, RaceRedi's alter ego"), 24 ("RaceRedi, through its alter ego, Finishes, breached the Contract"). Nevertheless, because the Counterclaim can be read to also allege a direct breach by Finishes, and because claims can be plead in the alternative, the Court will permit the claims against Finishes to go forward.

                                    _____/s/_____
                                    William M. Nickerson
                                    United States District Judge
Dated: July 16, 2009